UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                                    Chapter 7
                                                                                  BKY 19-40658-KHS
Scheherazade, Inc,

       Debtor.

**REPLY OF TRUSTEE TO OBJECTION OF BHM CAPITAL, LLC
FOR USE OF CASH COLLATERAL AND FOR THE GRANT
OF ADEQUATE PROTECTION**

The chapter 7 trustee submits this reply in connection with BHM Capital, LLC's objection for use of cash collateral.

## BACKGROUND

When the case was filed on March 10, 2019, the trustee undertook to safeguard the jewelry inventory. She immediately packed up the inventory, retained security during the process and delivered the inventory to safe deposit boxes at a bank. The expenses to safeguard the jewelry inventory were borne personally by the chapter 7 trustee in the approximate amount of $3,500. The removal of the jewelry inventory took approximately four days.

While at the store in the Galleria, the trustee met with the owner of the debtor. She asked him if he had any recommendations for liquidators of the jewelry. He personally recommended Eaton Hudson, Inc. because he had past dealings with Eaton Hudson and was impressed with their results. After removing the inventory, the trustee explored different methods to liquidate the inventory, including considering other liquidators that she has used in the past, which charge 10 to 20 percent of the gross, plus expenses. She also sent out three non-disclosure agreements to

1

companies who had expressed interest in the inventory and assets of the debtor.[1]  She also spoke with Eaton Hudson regarding the concept of a going out of business sale at the Galleria.  She ultimately selected Eaton Hudson.  Eaton Hudson's employment has been court approved.

In order to conduct a going out of business sale at the Galleria, the trustee required permission from the landlord as it would violate certain lease provisions.  The trustee entered into discussions with the landlord in order to assure the landlord that the trustee and her liquidator would honor the Galleria's standards and requirements in conducting the sale.  Eaton Hudson participated in a conference call with the landlord's representatives.  After receiving assurances from the trustee and Eaton Hudson, the landlord has consented to the sale.  The trustee has 60 days to complete the sale.  The trustee must vacate the premises on or before June 15, 2019.

The trustee began negotiating with BHM Capital, LLC, for use of cash collateral.  Prior to this time, the trustee was in regular communications with BHM's counsel. On March 27, 2019, the parties discussed use of cash collateral. On April 3, 2019, the parties, including Eaton Hudson, discussed the pro forma expenses that are attached to the trustee's motion as <u>Exhibit A</u>.  In connection with those negotiations, the trustee assured BHM that her duty was to maximize the return on the inventory to the benefit of all creditors.  Eaton Hudson also assured the trustee that was its goal as well.

After discussion with BHM, the trustee forwarded a stipulation for use of cash collateral to BHM on April 9, 2019, together with the pro forma.  The trustee agreed to a replacement lien in the collateral and cash collateral.  She also agreed to daily sales reports and to make periodic payments to BHM.  On April 10, 2019, BHM wanted 25 percent of the net sale proceeds to be deposited in a separate account in favor of BHM.  The trustee agreed to the additional request and

---

[1] The trustee has received one offer that is 35 to 40 percent of the cost of the jewelry.  Of course, there were conditions attributed to this offer.

revised the stipulation. The trustee also agreed to an additional term that the trustee hold the proceeds from the liquidation of BHM's collateral in a separate account until she received written consent from BHM to use those proceeds over and above the costs agreed to on the pro forma. On April 11, 2019, BHM came back with more demands of adequate protection. BHM requested that 25 percent of the gross, not the net, sale proceeds be segregated in the separate account. The trustee agreed to those terms with the added provision that it exclude sales tax. The trustee would not agree that BHM would agree that Eaton Hudson provide a guarantee to BHM up to the amount of its encumbrance, nor would she agree that BHM be allowed to take inventory prior to the sale. At 5:19 p.m., on April 11, 2019, the trustee was informed that BHM would not agree to use of cash collateral and was advised that: "You may wish to schedule an expedited motion for non-consensual use of cash collateral. It may be possible to get a consensual agreement between now and the hearing." The trustee filed her motion as quickly as she could hoping that the parties would agree to use of cash collateral. Unfortunately, BHM will not consent.

## **ARGUMENT**

In this matter, BHM is being adequately protected by a replacement lien. Pursuant to the debtor's records, the store-owned inventory's retail price is valued at $2,961,194.55, the costs of the inventory is $1,403,194.88. In addition, BHM has a lien in the furniture, fixtures and equipment. At the time of filing, BHM was owed principal of $284,004.29, interest of $5,027.55, plus costs and reasonable attorneys' fees. Daily interest accrual is $155.62.

"In considering the adequacy of an offer of adequate protection, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the [trustee's] request for use of cash collateral, and (3) determine whether the [trustee's] adequate protection proposal protects value as nearly as possible

against risks to that value consistent with the concept of indubitable equivalence." *In re Polaroid Corp.*, 460 B.R. 740, 742–43 (B.A.P. 8th Cir. 2011) citing *Martin v. Commodity Credit Corporation (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985). The store-owned jewelry has a retail value of $2,961,194.55 and a wholesale value of $1,403,194.88. The secured creditor was owed $289,031.84 as of the date of filing. BHM is oversecured and is being adequately protected. In fact, in the context of a relief from stay motion, the court found that an equity cushion of $1,100,000 was sufficient to deny relief from automatic stay with a debt of $400,000. *In re Johnson,* 90 B.R. 973 (Bankr. D. Minn. 1988).

A chapter 7 trustee is responsible for liquidating the assets of the estate in an efficient manner while maximizing the benefit to creditors. The trustee exercises business judgment in administering an estate in order to accomplish this goal. Everything the trustee does on behalf of the estate is governed by the business judgment rule. "The business judgment test is a flexible one, designed to allow the trustee, and ultimately the court, to exercise their discretion fairly in the interest of all who have had the misfortune of dealing with the debtor." *Bregman v. Meehan* (*In re Meehan)*, 59 B.R. 380, 385 (E.D.N.Y. 1986), citing *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 43 (2d. Cir. 1979). The trustee's duties include overseeing the professionals the trustee has employed to represent the estate. *See In re Peterson*, 566 B.R. 179, 196 (Bankr. M.D. Tenn. 2017).

The trustee has until June 15, 2019, to conduct a sale at the Galleria. In employing Eaton Hudson, the trustee considered many factors, including its familiarity with the inventory, the Galleria and the employees. She also considered the commission rate in comparison to other liquidators she has worked with in the past. She believes in her best business judgment that in having the sale as soon as possible at the Galleria she will maximize the value of the collateral for

the benefit of all creditors, not just BHM. The trustee also believes this is the best method to maximize the return of all creditors. She believes that BHM is adequately protected by a replacement lien. Pursuant to the debtor's records, the store-owned inventory's retail price is valued at $2,961,194.55, the costs of the inventory is $1,403,194.88. In addition, BHM has a lien in the furniture, fixtures and equipment. A guaranteed payment by the liquidator will cost the estate money in additional commissions and costs of at least two percent over and above the current commission rate of five percent and costs associated by the liquidator fees. Moreover, the United States Trustee has indicated that he will not recommend the employment of a liquidator with a guarantee payment for the sole benefit of a secured creditor that will increase costs to the estate to the detriment of unsecured creditors. The trustee has expressed to BHM's counsel on several occasions that it is her intention that she pay them off as soon as possible to stop the accrual of 20 percent interest and other costs. The projections of Eaton Hudson clearly show that this is possible. *See* Epstein Aff. ¶ 9.

## **CONCLUSION**

For all of these reasons, the trustee requests that her motion for use of cash collateral be granted, so she can start the sale as quickly as possible in order to maximize the value of the inventory and capture interest from purchasers for Passover and Mother's Day.

Dated: April 18, 2019.                                MANTY & ASSOCIATES, P.A.

*/e/ Nauni Manty*
Nauni J. Manty (#230353)
Mary F. Sieling (#389893)
401 Second Avenue North, Suite 400
Minneapolis, Minnesota 55401
Telephone: (612) 465-0990
Fascimile: (612)746-0310
mary@mantylaw.com

*Attorneys for the Trustee*

**VERIFICATION**

I, Nauni J. Manty, the chapter 7 trustee, named in the foregoing notice of expedited hearing and motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: April 18, 2019.

_____
Nauni J. Manty, Trustee