**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 7 |
| Scheherazade, Inc., | Bankruptcy 19-40658 |
| Debtor. | |

**LIMITED OBJECTION TO TRUSTEE'S NOTICE OF SETTLEMENT**

BHM Capital, LLC ("BHM") submits this limited objection to the Trustee's Notice of Settlement and Sale dated May 28, 2019 (the "Notice"). As a preliminary matter, BHM does not object to the sale itself. Rather, BHM objects to the Notice to preserve its interest in the sale proceeds. BHM objects to the Notice for the following reasons:

First, BHM has a properly perfected security interest in the Debtor's inventory. Chardonnay Diamonds, LLC ("Chardonnay")'s failure to file a UCC-1 financing statement to perfect its interest in Item Nos. CR16017, CR16016 and CR16019 (the "Consigned Jewelry") elevates BHM to first priority lien holder with respect to the Consigned Jewelry. An avoidance of Chardonnay's unperfected lien cannot defeat that priority.

Second, to the extent that the trustee asserts that she has a priority lien in the Consigned Jewelry, her Notice is not the appropriate method to determine that priority. An action to determine the validity, priority, or extent of a lien or other interest in property must be commenced by an adversary proceeding – not a general notice of settlement or sale. Fed. R. Bankr. Proc. 7001(2).

**I.   BHM has a Properly Perfected First Priority Interest in the Debtor's Inventory.**

    A.    <u>BHM has a Properly Perfected Security Interest in Inventory</u>.

    1.    On June 14, 2018, prior to the bankruptcy filing, the debtor and BHM entered into a Loan Agreement, Secured Promissory Note, Security Agreement, Guaranty by Scott H. Rudd, Pledge Agreement, which documents were amended by the First Amendment to Loan Documents dated September 18, 2018, to increase the amount loaned to $326,000. BHM filed a UCC-1 Financing Statement on June 14, 2018, perfecting its lien. The Loan Agreement, Secured Promissory Note, Security Agreement, Guaranty, Pledge Agreement, First Amendment to Loan Documents and UCC-1 Financing Statement are hereinafter referred to as the "Loan Documents".

    2.    The Secured Promissory Note provides that the principal shall accrue interest at the rate of 15 percent per annum and default interest rate of 20 percent per annum. The Secured Promissory Note also provides that in an event of default, the debtor will pay reasonable out-of-pocket costs and expenses, including reasonable collection costs and reasonable attorneys' fees. On February 28, 2019, BHM sent a notice of Promissory Note default to the debtor. As such, the debtor was in default under the Loan Documents as of the date of filing. As of the date of filing, BHM was owed principal of $284,004.29, interest of $5,027.55, plus costs and reasonable attorneys' fees. Daily interest accrual is $155.62, which reflects the default interest rate.

    3.    The Security Agreement provides that BHM has a security interest in the following:

> all personal and fixture property of every kind and nature including all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including healthcare insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter of credit rights (whether or not the letter of credit is evidenced in a

>writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, tort claims, and all general intangibles including all tax refunds, payment intangibles, patent, patent applications, software, engineering drawings, service marks, customer lists, goodwill, and all licenses, permits, agreements of any kind or nature pursuant to which the debtor possesses, uses or has authority to processes or use property (whether tangible or intangible) of the debtor, and all recorded data of any kind or nature, regardless of the medium of recording including all software, writings, plans, specification and schematics

(the "Collateral").

4. BHM perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the office of the Minnesota Secretary of State on June 14, 2018 (the "UCC-1").

5. On April 12, 2019, the trustee filed a motion for use of BHM's cash collateral.

6. On April 18, 2019, the court entered an order approving the trustee's use of BHM's cash collateral, and authorized a replacement lien to BHM.

7. The trustee has remitted the sum of $284,004.99 to BHM which constitutes the pre-petition principal balance on its Secured Promissory Note. To date, the trustee has not remitted the sum owed to BHM for its accrued, unpaid interest (pre-petition or post-petition), or its attorney's fees.

B.  <u>Chardonnay Failed to Perfect its Security Interest in the Consigned Jewelry.</u>

8. "Consignor" means a person who delivers goods to a consignee in a consignment. Minn. Stat. §336.9-102(21). Article 9 further provides that:

>Consignor's inventory purchase money security interest. The security interest of a consignor in goods that are the subject of a consignment is a purchase money security interest in inventory.

Minn. Stat. §336.9-103(d). The Uniform Commercial Code Comments state that:

3

> This drafting convention obviates any need to set forth special priority rules applicable to the interest of a consignor. Rather, the priority of the consignor's interest as against the rights of lien creditors of the consignee, competing secured parties, and purchasers of the goods from the consignee can be determined by reference to the priority rules generally applicable to inventory, such as Sections 9-317, 9-320, 9-322, and 9-324.

Minn. Stat. §336.9-103, Uniform Commercial Code Comment 6.[1]

    C.    <u>BHM has a first priority lien in the Consigned Jewelry.</u>

9. Chardonnay admits that it did not perfect its security interest in the Consigned Jewelry by filing a financing statement.

10. A properly perfected secured party takes priority over a consignor who fails to properly perfect its security interest by filing a financing statement. Minn. Stat. 336.9-324(b) (a perfected security interest in inventory has priority over a conflicting security interest); *See also Borg Warner Acceptance Corp. v. ITT Diversified Credit Corp.*, 344 N.W.2d 841, 842 (1984) (Holder of prior perfected blanket security interest in inventory retained priority over subsequent purchase money lender who failed to follow perfection rules by notifying prior secured party of purchase money security interest); *Luson Int'l Distributors, Inc. v. Basic Int'l Corp.*, 458 N.W.2d 532 (Wisc. Ct. App. 1990)(bank's perfected security interest has priority over the consignor's unperfected interest); *Murphy v. SouthTrust Bank of Alabama, N.A.* 611 So. 2d 269 (Ala. 1992)(same).

**II.    <u>To the Extent the Trustee is asserting a Priority Lien in the Consigned Jewelry, she Must Commence an Adversary Proceeding.</u>**

11. An action to determine the validity, priority, or extent of a lien or other interest in property must be commenced by an adversary proceeding – not a general notice of settlement or sale. Fed. R. Bankr. Proc. 7001(2).

---

[1] <u>For other purposes</u>, including the rights and duties of the consignor and consignee as between themselves, the consignor would remain the owner of goods under a bailment arrangement with the consignee. See Section 9-319. Minn. Stat. §336.9-103, Uniform Commercial Code Comment 6.

**MESSERLI & KRAMER**

Dated: June 18, 2019

/e/ Joseph W. Lawver
Joseph W. Lawver
100 South Fifth Street
Suite 1400
Minneapolis, MN 55402-4218
Telephone: (612) 672-3733
Fax: (612) 672-3777

**ATTORNEYS FOR BHM CAPITAL, LLC**

1775774.1